UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BRIDGEFIELD CASUALTY INSURANCE COMPANY        CIVIL ACTION

VERSUS                                        NO: 12-2336

RIVER OAKS MANAGEMENT, INC                    SECTION: "H"(3)


ORDER AND REASONS

Before the Court are Cross-Motions for Summary Judgment (Docs. 21 & 23). For the following reasons, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.


BACKGROUND

Bridgefield Casualty Insurance Company filed this action for declaratory judgment seeking a declaration that a Louisiana workers compensation insurance policy sold to River Oaks Management, Inc. does not provide coverage for an accident which occurred in Mississippi. River

1

Oaks is an apartment management firm which, until 2011, operated exclusively in Louisiana. Bridgefield first began writing workers compensation insurance policies for River Oaks in 2005. Each policy was written for a term of one calendar year and contained a declaration page which indicated that the policy provided workers compensation insurance for the state of Louisiana. Beginning in 2006, the declarations pages noted the policies included "Other States" coverage for nine additional states, including Mississippi. Part Three of the policy provides that if River Oaks begins work during any policy year in a listed "Other State," that policy will provide workers compensation coverage for work performed in the "Other State" during that same policy year. Part Three also provides that, if River Oaks "has work" in a listed "Other State" on the first day of a policy period, the policy will not provide workers compensation coverage for work performed in that state during that policy year unless River Oaks notifies Bridgefield of the work within 30 days of the effective date of the policy (January 31st). In other words, if River Oaks starts work in an "Other State" anytime after January 1 of a policy year, that work will be covered by the policy. On the other hand, if River Oaks has ongoing work in an "Other State" on January 1 of any policy year, the notification provision applies.

On September 30, 2011, River Oaks contracted with an apartment complex in Mississippi to provide apartment management services. River Oaks subsequently contracted with two other Mississippi apartment complexes in the fall of 2011. On June 8, 2012, a River Oaks employee fell down a ladder at one of River Oaks's Mississippi locations, sustaining severe injuries. River Oaks

2

filed a claim with Bridgefield and Bridgefield promptly issued a Reservation of Rights letter in which they reserved their rights to deny coverage for the accident. On September 21, 2012, Bridgefield filed this action seeking a declaration that the policy did not provide coverage for the accident. Both parties have moved for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2012). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to

establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

**LAW AND ANALYSIS**

In this diversity case, Louisiana law controls. *Seacor Holdings, Inc. v. Commonwealth Ins.*

*Co.*, 635 F.3d 675, 681 (5th Cir. 2011). Louisiana law governing the interpretation of insurance contracts is well settled. "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So. 2d 96, 99 (La. 2004). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43 (La. 2000). "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent." *Mayo*, 869 So. 2d at 99–100. "The determination of whether a contract is clear or ambiguous is a question of law." *Cadwallader*, 848 So.2d at 580.

The workers compensation policy at issue provides two distinct coverages for workers compensation injuries. The first, referred to in the policy as 3A coverage, is the primary coverage under the policy. River Oaks' policy provides 3A coverage only for injuries which occur in Louisiana. The parties agree that the 3A coverage does not provide coverage for the instant dispute. The second coverage, referred to as 3C coverage or "Other States Insurance," provides coverage for injuries which occur in certain designated states outside of Louisiana, including Mississippi. Part

5

Three of the policy governs the Other States coverage and provides:

> PART THREE
> OTHER STATES INSURANCE
>
> A. How This Insurance Applies
>
> > 1. This other states insurance only applies if one or more states are shown in Item 3.C. of the Information page.
> >
> > 2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in item 3.A. of the Information Page.
> >
> > 3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.
> >
> > 4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.
>
> B. Notice
> Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

Bridgefield argues that section A.4. of Part Three operates to exclude coverage for this injury. Bridgefield alleges that River Oaks "had work" in Mississippi on the effective date of the policy (January 1, 2012) and that River Oaks failed to notify Bridgefield within 30 days (on or before January 31). River Oaks admits that it had work in Mississippi on the effective date of the policy,

6

and that it failed to notify Bridgefield within 30 days. Therefore, Bridgefield has met its burden on this Motion to show that there is no genuine dispute of material fact. The Court further finds that the relevant policy language is clear and unambiguous and must be applied as written. Because River Oaks failed to notify Bridgefield that it was working in Mississippi within 30 days of the effective date of the policy, the policy expressly excludes coverage for the instant claim.

Having found that Bridgefield has met its burden on this Motion, the Court turns to River Oaks' arguments in opposition to the motion. River Oaks claims that the policy is unenforceable under Louisiana Law, and that Bridgefield is estopped from denying coverage. Each of these arguments will be examined in turn.

River Oaks argues that the relevant policy provision is unenforceable based on La. Rev. Stat. § 22:860, which provides (as pertinent here) "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." This statute, referred to in the jurisprudence as an "anti-technical statute," prevents an insurance company from voiding an entire insurance contract based on alleged fraud on the part of the insured unless the insurer meets a heightened burden of proof imposed by the statute. River Oaks' assertion that the statute applies in this matter is misplaced. Several courts, including the U.S. Fifth Circuit, have held that this statute only applies where the insurer is attempting to nullify an entire insurance policy. It is not applicable where, as

7

here, the insurer is only relying on an exclusion contained within the policy. *See Stream v. Aetna Cas. & Sur. Co.*, 608 So. 2d 260, 262-63 (La. App. 3 Cir. 1992) (citing *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 224-25 (5th Cir. 1986)).

This case does not fall into the category of cases to which §860 applies. Bridgefield is not seeking to void the entire worker's compensation policy. Instead, Bridgefield asks this Court to hold that the policy, by its plain text, excludes coverage for one specific claim. As such Bridgefield is not held to the heightened standard of §860.

River Oaks next argues that Bridgefield is estopped from denying coverage because it later accepted premiums which were calculated, in part, based on Mississippi salaries. Since the premiums for the workers compensation insurance policy at issue were based on the total payroll of River Oaks in a given year, Bridgefield would conduct annual payroll audits. These audits, which usually occurred in the spring, would review the final payroll numbers from the previous year. Throughout a given policy year, River Oaks would pay premiums which were estimated based on the prior year's payroll. After the audit, Bridgefield would calculate the final premium for the previous year, and issue a refund or invoice accordingly.

River Oaks' argument focuses on a payroll audit which occurred in March of 2012. During the audit, a contractor of Bridgefield inspected some of River Oaks' payroll records for the 2011 calendar year. River Oaks alleges that the payroll numbers which were provided to the auditor included the wages of Mississippi employees. River Oaks argues that the estimated policy premium

8

payments for 2012 were based (in part) on Mississippi wages.  Thus, it claims that Bridgefield is estopped from denying coverage for Mississippi workers because Bridgefield accepted premiums which were partially based on Mississippi payroll.  To support its argument River Oaks cites to *Alliance Gen. Ins. Co. v. Louisiana Sheriff's Auto. Risk Program*, 52 F. Supp. 2d 711 (E.D. La. 1999).  Alliance General applied the long-standing jurisprudential rule that an insurer who accepts premiums after receiving information that creates a privilege of forfeiture of coverage waives the right to subsequently contest that coverage.  *Id*. at 719.

In order for this argument to have merit, River Oaks would have to demonstrate that Bridgefield received information which gave them the right to cancel the policy, and that Bridgefield continued to accept premiums after receiving that information. Based on the evidence submitted by both parties, there is a genuine dispute of fact as to whether Bridgefield received information at the March audit from which it could conclude that River Oaks was operating in Mississippi.  However, this fact is not material, because the knowledge that River Oaks was doing work in Mississippi would not have given Bridgefield the right to cancel the policy.  The policy does not contain a provision which allows cancellation of the policy if River Oaks performs work in other states. Instead, it contains an exclusion of coverage for claims based on work performed in other states under certain circumstances.  Because Bridgefield never had the right to cancel the entire policy, the rule of Alliance General is not applicable.

Finally, River Oaks argues that Bridgefield is estopped from denying coverage for this

9

accident because Bridgefield has already paid a portion of the claim. This defense has no merit. On July 24, 2012, Bridgefield issued a Reservation of Rights letter to River Oaks. As such, Bridgefield's payments were made pursuant to that letter. It is a well–settled principle of insurance law that a timely reservation of rights does not operate to waive the insurer's coverage defenses. *See, e.g., Arceneaux v. Amstar Corp.*, 969 So. 2d 755, 768 (La. Ct. App. 4th Cir. 2007) ("A prompt reservation of rights letter serves the purpose of negating the inference of a voluntary relinquishment of a known right to contest coverage.").

As discussed above, there is no dispute that River Oaks was doing work in Mississippi on the effective date of the workers compensation policy, and that River Oaks failed to notify Bridgefield of that work within 30 days of the effective date of the policy. For that reason, under the clear and unambiguous terms of the policy, there is no coverage for the claim as issue in this suit.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion (Doc. 21) is GRANTED and Defendant's Motion (Doc. 23) is DENIED.

New Orleans, Louisiana, this 7th day of October, 2013.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**