UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIDGEFIELD CASUALTY INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-499 c/w 14-1665** |
| **RIVER OAKS MANAGEMENT, INC.** | **SECTION: "H"(2)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bridgefield Casualty Insurance Company ("Bridgefield") filed this action seeking a judgment declaring that the Louisiana workers' compensation insurance policy sold to River Oaks Management, Inc. ("River Oaks") does not provide coverage for an accident that occurred in Mississippi. River Oaks is an apartment management firm headquartered in Louisiana. Bridgefield began writing workers' compensation insurance policies for River Oaks in 2005. Each policy was written for a term of one calendar year and contained a declaration page indicating that the policy provided workers' compensation insurance for the state of Louisiana. Beginning in 2006, the declarations pages noted the policies included "Other States" coverage for nine additional states, including Mississippi. Part Three of the policy provides that if River Oaks begins work during any policy year in a listed "Other State," the policy will

1

provide workers' compensation coverage for work performed in the "Other State" during that same policy year.  Part Three also provides that, if River Oaks has work in an "Other State" on the first day of a policy period, the policy will not provide workers' compensation coverage for work performed in that state during that policy year unless River Oaks notifies Bridgefield of the work within 30 days of the effective date of the policy (January 31st).  In other words, if River Oaks begins work in an "Other State" any time after January 1 of a policy year, that work will be covered by the policy.  On the other hand, if River Oaks has ongoing work in an "Other State" on January 1 of any policy year, it must notify Bridgefield in accordance with the policy.

Prior to 2011, River Oaks operated exclusively in Louisiana.  On September 30, 2011, River Oaks contracted with an apartment complex in Mississippi to provide apartment management services.  River Oaks subsequently contracted with two other Mississippi apartment complexes in the fall of 2011.  River Oaks' work in Mississippi continued into 2012, but it failed to notify Bridgefield in accordance with the policy.  On June 8, 2012, a River Oaks employee fell off a ladder at one of River Oaks' Mississippi locations, sustaining severe injuries.  When the employee made a claim for workers' compensation coverage, Bridgefield contended that the policy did not apply to the Mississippi injury because River Oaks failed to comply with the policy's notice provisions.  This litigation resulted.

On November 4, 2013, this Court granted summary judgment to Bridgefield. The Court held that the policy was clear and unambiguous, that River Oaks had failed to comply with the policy's notice provisions, that there was no coverage for the accident in question, and that none of River Oaks' affirmative defenses had merit.  River Oaks appealed.  The Fifth Circuit affirmed this Court's holding that the policy did not provide coverage for the

accident but held that there was a genuine dispute of material fact regarding River Oaks' waiver defense.  The matter was remanded to this Court for resolution of the sole remaining issue: "whether Bridgefield waived its right to deny coverage for River Oaks' failure to comply with the notice provision." This case proceeded to a bench trial on April 22, 2016.  Having considered the evidence admitted at trial, the arguments of counsel, and the post-trial briefing, this Court makes the following findings of fact and conclusions of law.  To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## **FINDINGS OF FACT**

1. River Oaks Management, Inc. is a Louisiana corporation engaged in the real estate management business.  It provides property management services to apartment complexes.
2. Bridgefield Casualty Insurance Company insured River Oaks under a workers' compensation/employer's liability policy number 198-03829, effective from January 1, 2012 to January 1, 2013 (the "2012 Policy").  This policy provides worker's compensation and employer liability coverage, subject to certain terms, conditions, limitation, and exclusions.
3. Part One of the 2012 policy provides workers' compensation insurance.
4. Section 3.A of the 2012 Policy's Information Page states that part 1 of the policy applies to Louisiana.
5. Section 3.C of the 2012 Policy Information Page identifies Mississippi as a state for which the Other States Insurance Coverage under Part Three Applies, subject to the conditions contained therein.

6. Part Three of the 2012 Policy ("Other States Insurance") provides as follows:

    A. How this Insurance Applies

    1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page

    2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

    3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to the person entitled to them.

    4. If you have work on the effective date of this policy in any states not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

    B. Notice

    Tell us at once if you begin work in any state listed in item 3.C. of the Information Page.

7. Prior to September 20, 2011, River Oaks operated exclusively in Louisiana. In the last quarter of 2011, River Oaks entered into agreements to provide management services at the Madison Apartments and the Andrews Apartments complexes in Mississippi.

8. River Oaks did not notify Bridgefield on or before January 1, 2012, the effective date of the 2012 Policy, that River Oaks was working or had existing business operations in Mississippi.

9. River Oaks did not notify Bridgefield within thirty days after the effective date of the 2012 Policy that it had business operations in Mississippi.

10. Between January 1, 2005 and January 1, 2012, Bridgefield conducted premium audits of River Oaks' payroll records for the purpose of determining the final audited premium for the policy period for the previous policy year.  The premium audit results were also used to set monthly estimated premiums for the policy year during which the audit took place.

11. In March 2012, Ms. Lynette Greco, a premium auditor and employee of Summit Consulting, Inc. ("Summit"), Bridgefield's managing general agent, went to River Oaks Louisiana office to conduct the annual premium audit.  As a part of this audit, she reviewed approximately 150 pages of documents to make her premium calculations.  These documents contain references to the payment of Mississippi employees.

12. Ms. Greco's review of documents during the premium audit lasted between 30 minutes and an hour.  This audit was one of approximately 600 audits conducted each year by Ms. Greco.

13. Ms. Greco's inspection focused on the total dollar amounts of payroll found on particular pages of certain documents.  She did not study each page provided.  She was neither required to do so nor did she have any reason to do so.

14. Ms. Greco's premium audit did not specifically identify that River Oaks had Mississippi Payroll during the year ending December 31, 2011.

15. During the audit, no one from River Oaks spoke to Ms. Greco about its Mississippi operations or Mississippi addresses for River Oaks employees.

16. On June 8, 2012, Ernest Stoltz suffered a fall while working for River Oaks at the Madison Apartments in Mississippi. River Oaks subsequently notified Bridgefield of the accident and submitted a claim pursuant to the 2012 Policy.

17. At the time of the accident, Bridgefield did not have notice that River Oaks was doing business in Mississippi.

## CONCLUSIONS OF LAW

1. The sole issue remaining to be decided on remand is whether Bridgefield waived its right to deny coverage for River Oaks' failure to comply with the notice provision. River Oaks contends that the remand from the Fifth Circuit obligates the Court to find in its favor. This Court respectfully disagrees. Were that the case, trial of this matter would have been unnecessary. This matter was remanded from the Fifth Circuit because the Court needed to make a factual finding—whether Bridgefield had notice of River Oaks' Mississippi opperations. Having answered that question in the negative, the Court finds that River Oaks' claim of waiver must fail, as discussed below.

2. '"Waiver is usually defined as the intentional relinquishment of a known power or privilege.' *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1373 (La.1987) (Dennis, J.) 'Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.' *Id*. at 1374. . . . '[A] waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered.' *Steptore v.*

6

*Masco Constr. Co.*, 93–2064 (La.8/18/94); 643 So.2d 1213, 1216 (Dennis, J.) (emphasis added); see also *Tate*, 508 So.2d at 1375 (same). An insurer may waive a provision that falls short of granting it the right to cancel the entire policy, such as the exclusion-of-coverage provision at issue here." *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, 590 F. App'x 308, 315-16 (5th Cir. 2014).

3. The party asserting waiver, typically the insured, bears the burden of proof and persuasion on that issue. *See State Farm Mut. Auto Ins. Co. v. Cooper,* 707 So.2d 986, 989 (La. App. 3d. Cir 1997).

4. "'[U]nder Louisiana law, the acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege.' *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309–10 (5th Cir.1993) (internal quotation marks omitted); see also *Swain v. Life Ins. Co. of La.*, 537 So.2d 1297, 1300 (La.Ct.App.1989) (same). Subjective knowledge by the insurer is not required. 'It is well established that an insurer is charged with knowledge of the contents of its own policy.' *Steptore*, 643 So.2d at 1216. And 'notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.' *Id*." *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, 590 F. App'x 308, 316 (5th Cir. 2014).

5. This Court finds that Bridgefield did not waive its right to deny coverage based on noncompliance with the notice provisions of the policy. Based on the testimony admitted at trial the Court concludes that Bridgefield was neither on notice regarding River Oaks'

Mississippi business activities nor on notice of facts that would have triggered a duty to investigate. Though subjective knowledge of an occurrence that would allow the insurer to disclaim coverage is not required, the insurer must, at the very least, have knowledge of some fact that "would cause a reasonable person to inquire further." River Oaks would have this Court impute to Bridgefield the entire contents of every document that passed through Ms. Greco's hands as she conducted the premium audit. The Court declines to do so. The purpose of the audit was limited to determining the total amount of payroll from the preceding year. Ms. Greco did not read every line of every page presented to her, instead focusing on specific lines to glean the information pertinent to her limited task. These documents were neither retained by Bridgefield nor made a part of its file. This is a far cry from the cases in which Louisiana courts have found waiver, wherein some facially apparent fact conveyed to the insurer placed it on notice. *See, e. g. Swain v. Life Ins. Co. of La.*, 537 So. 2d 1297 (La. App. 2 Cir. 1989) (finding insurance company could not deny coverage based on "sound health" provisions when policy was issued despite the fact that the insured obtained the policy while on crutches, displaying visible signs that his health was questionable); *Home Ins. Co. v. Matthews*, 998 F.2d 305 (5th Cir. 1993) (finding waiver of policy provision allowing legal malpractice insurer to disclaim coverage due to dishonest answers on application where insurer accepted premiums despite the fact that insured attached notice of 16 claims against him to application).

6.  The 2012 Policy does not provide coverage for benefit claims by River Oaks employee Ernest Stolz for injuries sustained in the course and scope of his employment in Mississippi.

## CONCLUSION

For the foregoing reasons, this Court finds that the 2012 Policy does not provide coverage for benefits claims by River Oaks employee Ernest Stolz for injuries sustained in the course and scope of his employment in Mississippi.

New Orleans, Louisiana this __19th__ day of July, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**